**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Paul Blackmer**</u>

     **v.**                                Civil No. 05-cv-340-PB
                                              Opinion No. 2008 DNH 017

<u>**Warden, Northern New Hampshire**</u>
<u>**Correctional Facility**</u>


<u>**MEMORANDUM AND ORDER**</u>

     Paul Blackmer's habeas corpus petition challenges his March 11, 1999 conviction for conspiracy to possess marijuana with intent to sell.  His jailer, the Warden of the Northern New Hampshire Correctional Facility, has moved for summary judgment. For the reasons set forth below, I grant the Warden's motion.


**I.  <u>FACTS AND PROCEDURAL HISTORY</u>**

     This case has a complex procedural history that encompasses separate convictions in 1997 and 1999.  I describe the facts and procedural history of each case in turn, focusing in greater detail on the 1999 conviction because it is the subject of the current challenge.

**A.**   **<u>1997 Conviction</u>**

1.  <u>Facts</u>

Blackmer was arrested in 1994 after he retrieved packages containing approximately 50 pounds of marijuana from a United Parcel Service office in Laconia, New Hampshire.

2.  <u>Procedural History</u>

Blackmer was originally indicted in 1994, shortly after his arrest, but the state dismissed the indictments without prejudice prior to trial.  Blackmer was reindicted in May 1996.  On December 23, 1997, he was convicted after a jury trial of possession of marijuana with intent to sell and conspiracy to possess marijuana with intent to sell.

Blackmer's counsel filed a notice of appeal on his behalf with the New Hampshire Supreme Court.  Prior to briefing, however, Blackmer filed a pro se "Motion to Stay Appeal and Remand to Resolve Brady Material Answer Issue."  In this motion, Blackmer sought a remand to the superior court so that the state could be compelled to respond to his contention that one of the investigating officers, DEA Agent Michael Connolly, committed perjury before the grand jury that had returned the original

–2–

indictment.[1]  The superior court denied Blackmer's motion and directed him to file his appellate brief.  After Blackmer failed to file a brief, the New Hampshire Supreme Court dismissed his appeal pursuant to N.H. Supr. Ct. R. 16(12).

Blackmer litigated various post-conviction motions in state court and ultimately filed his habeas corpus petition in this court on May 29, 2003.  On December 9, 2004, I issued a Memorandum and Order dismissing Blackmer's petition on statute of limitations grounds.  Blackmer v. Warden, 2004 DNH 180.

**B.   1999 Conviction**

1.  Facts

Detective Kenneth May, acting undercover, befriended Blackmer in December 1995 at the Christmas Island Restaurant in Laconia, New Hampshire.  While in New Hampshire, May and Blackmer discussed drug trafficking and made plans to travel together to Mexico to obtain marijuana and transport it back to the East Coast.  Many of their discussions were tape-recorded by Detective May.

---

[1] I adopt Blackmer's characterization and refer to the state's anticipated response as the "Brady Material Answer."

Blackmer alleges that he knew that Detective May was an undercover policeman and that the police knew that Blackmer was aware of May's true identity.  It is undisputed that Blackmer and May traveled to California together in January 1996, and that the two shared a hotel room in California which, unbeknownst to Blackmer, was paid for with money from the Drug Enforcement Agency (DEA).  May consented to have the room videotaped.  It is undisputed that Blackmer was in contact with a man in Mexico named Jorge Flores, although Blackmer disputes the state's allegation that his contact with Flores was for the purpose of drug trafficking.

At trial, May testified that Blackmer crossed into Mexico to meet with Flores and that Blackmer devised a plan to pay Flores $5,000 for marijuana to be smuggled into the United States for distribution by Blackmer and May.  Blackmer disputes these facts. It is undisputed that before Blackmer obtained any marijuana, he was arrested in California.  Following Blackmer's arrest, officers seized evidence in a search incident to arrest and later searched Blackmer's New Hampshire home pursuant to a valid warrant.

2.  Procedural History

A grand jury indicted Blackmer on May 30, 1996 on the charge of conspiracy to possess marijuana with the intent to sell.[2] Trial was originally scheduled for December 1997, but the court granted Blackmer's motion to continue the trial until January 1998.  On January 5, 1998, Blackmer filed a motion to continue and a motion for new counsel, together with an irrevocable waiver of his speedy trial rights.  The court granted both motions, appointing new counsel and continuing the trial indefinitely until new counsel was prepared.  The court held a status conference on the matter on May 26, 1998.  At that conference, Blackmer and his counsel again informed the court that Blackmer had waived his speedy trial rights.  On September 23, 1998, the court scheduled trial for February 1999, with the parties in agreement.  On January 25, 1999, the court granted the state's agreed-to motion to continue, and the trial was rescheduled for March 8, 1999.

A four-day jury trial was held in Belknap County Superior Court on March 8-11, 1999.  Blackmer was found guilty of one

---

[2] The indictment was returned with the indictments that resulted in the 1997 convictions but the two sets of charges were severed for trial.

count of conspiracy to possess marijuana with intent to sell in violation of N.H. Rev. Stat. Ann. §§ 629:3; 318-B:2 (1996).  He was sentenced to six to twenty years in prison.

Blackmer's counsel filed a notice of appeal on his behalf raising numerous issues.  Blackmer, however, filed a pro se objection seeking to have the appeal held in abeyance until the state provided the same "Brady Material Answer" that he had been seeking in his other case.  He also instructed his counsel not to file a brief on his behalf until he received the information he was seeking from the state.  This prompted counsel to file a motion to withdraw.  Blackmer then filed a supplement to the motion to withdraw asking the court to resolve the issue by ordering the state to produce the Brady Material Answer. Instead, the court granted counsel's motion to withdraw. Blackmer ultimately filed a pro se appellate brief, although the court never required the state to produce the Brady Material Answer.

The New Hampshire Supreme Court addressed only three of the many arguments that Blackmer presented in his appellate brief because it concluded that his additional arguments either "were not preserved, were not sufficiently developed for appellate

review, or were not raised in his notice of appeal." <u>State v. Blackmer</u>, 149 N.H. 47, 49 (2003).

The first argument that the court considered was Blackmer's contention that the state had violated his right to a speedy trial by failing to provide him with the transcript of Agent Connolly's 1994 grand jury testimony.  The court rejected this argument both because it determined that the testimony was irrelevant and because the state had given Blackmer a transcript of Agent Connolly's testimony in 1997, well before his 1999 trial.  <u>Id.</u> at 49.

The court also considered and rejected Blackmer's related contention that he could not properly brief the speedy trial issue because the court had denied him his right to appellate counsel.  In reaching this conclusion, the court explained that it would have been futile to appoint new appellate counsel for Blackmer because his pro se pleadings made it clear that he would not allow counsel to file a brief.  <u>Id.</u> at 50.

The second issue that the court considered was Blackmer's argument that he could not be convicted of conspiracy because his alleged conspirator, Detective May, was a police officer who never actually intended to possess or sell marijuana.  The court

rejected this "unilateral conspiracy" argument because it determined that the New Hampshire conspiracy statute "does not necessarily require that both parties to the conspiracy possess criminal intent." Id.

The final issue that the court considered was Blackmer's contention that he should have been sentenced under Massachusetts law because the alleged conspiracy involved an agreement to sell drugs in Massachusetts and the New Hampshire conspiracy statute provides that the penalty for conspiracy "is the same as that authorized for the crime that was the object of the conspiracy." N.H. Rev. Stat. Ann. § 629:3 IV.  The court rejected this argument because it construed New Hampshire conspiracy law to incorporate the penalty specified by New Hampshire law for the crime of selling marijuana.  Blackmer, 149 N.H. at 50-51.  The court also rejected any potential argument from Blackmer that the court lacked jurisdiction over him.  Id. at 51.

After affirming Blackmer's conviction, the New Hampshire Supreme Court appointed counsel to represent him on his motion for reconsideration.  Blackmer and his counsel filed separate motions.  Counsel's motion argued that the court should order a rehearing on the issue of whether a conspiracy involving

controlled substances can be formed by a unilateral agreement.

Blackmer's motion argued both that the crime of conspiracy

requires an actual meeting of the minds, not just a unilateral

agreement, and that the state interfered with his right to

effective assistance of counsel on appeal because it refused to

disclose the "Brady Material Answer."  Blackmer challenged the

New Hampshire Supreme Court's conclusion that he effectively

chose to proceed pro se, arguing that he "would gladly have

accepted Appellate Defender assistance were that counsel armed

with the 'delightfully exculpatory Brady Material Answer' as the

law requires."  The court denied Blackmer's motion for

reconsideration on March 14, 2003.

Blackmer filed a motion for a new trial in Belknap County

Superior Court on November 17, 2003.  Although Blackmer asserted

a variety of claims, the court addressed only two because it held

that his remaining arguments "are nothing more than a rehash of

claims made on prior occasions by him, all of which have been

rejected by this Court."  The court denied Blackmer's motion on

December 30, 2003, holding that his claims -- ineffective

assistance of counsel because counsel defended him on a bilateral

conspiracy theory rather than a unilateral conspiracy theory[3] and

a challenge to the constitutionality of N.H. Rev. Stat. Ann. §

629:3 on vagueness grounds -- were meritless.

Blackmer filed a pro se petition for a writ of habeas corpus

in Merrimack County Superior Court on August 30, 2004.  The state

moved to dismiss the petition, addressing each of Blackmer's

claims and arguing for dismissal of some claims on procedural

grounds and others on the merits.  The court granted the state's

motion on November 17, 2004 "for the reasons stated in the

motion."  The court denied Blackmer's motion for reconsideration

on December 16, 2004.

Blackmer then filed a notice of appeal with the New

Hampshire Supreme Court on January 11, 2005, appealing the denial

of both his habeas petition and his motion for a new trial.  On

June 13, 2005, the court declined Blackmer's appeal to the extent

that he challenged denial of his habeas petition and dismissed as

---

[3] A "unilateral" conspiracy is one in which only one party
has criminal intent, while a "bilateral" conspiracy is one in
which two or more parties have criminal intent.  New Hampshire
follows the unilateral theory of conspiracy; thus, a person can
be convicted of conspiracy for forming an agreement with another
party who has no criminal intent and/or is immune from criminal
liability, such as an undercover police officer.  N.H. Rev. Stat.
Ann. § 629:3.

untimely Blackmer's appeal to the extent that he challenged the denial of his motion for a new trial.

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### B.   AEDPA

I evaluate Blackmer's claims in accordance with the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  Under

-11-

AEDPA, a federal court has the power to grant a writ of habeas corpus for a state prisoner who is being held in violation of the U.S. Constitution or federal law, subject to several restrictions.  28 U.S.C. § 2241(c).  First, under AEDPA, an application for a writ of habeas corpus cannot be granted with respect to a claim that was adjudicated on the merits in state court unless adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

AEDPA's "contrary to" and "unreasonable application" provisions have independent meaning and must be read separately. Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision can be "contrary to" established Supreme Court precedent if either the state court reaches a conclusion on a question of law opposite to that reached by the Supreme Court, or a state court "confronts a set of facts that are materially indistinguishable" from relevant Supreme Court precedent and

reaches an opposite result.  Id. at 405–06.  A state court decision is an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts" of a prisoner's case, or if "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

As the Supreme Court recently held, "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).  Determinations of fact made by the state court are presumed to be correct; the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Schriro, 127 S.Ct. at 1940.

A federal court has no power to grant a writ of habeas corpus for a prisoner who is held pursuant to a state court judgment that rests on an independent and adequate state ground.

Coleman v. Thompson, 501 U.S. 722, 730 (1991).  To do so would render the state rule ineffective and "ignore[] the State's legitimate reasons for holding the prisoner."  Id.  A consistently applied and regularly enforced state procedural rule that causes a prisoner's federal claims to be procedurally defaulted can serve as an independent and adequate state ground. When application of an independent and adequate state procedural rule results in procedural default on a petitioner's federal claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Id. at 750; see also Wainwright v. Sykes, 433 U.S. 72, 87 (1977)(applying the cause and prejudice standard for procedurally defaulted claims); Lynch v. Ficco, 438 F.3d 35, 43 (1st Cir. 2006).

Finally, a federal court ordinarily cannot grant a writ of habeas corpus on a state prisoner's behalf unless the prisoner has exhausted the remedies available in state court prior to bringing a federal habeas corpus petition.  28 U.S.C. § 2254(b)(1).  Numerous federal courts have held, however, that

the exhaustion requirement is satisfied if remand to state court would prove futile because the claims would be procedurally barred under state procedural rules.  See Allen v. Attorney Gen. of Maine, 80 F.3d 569, 573 (1st Cir. 1996); see, e.g., Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999); Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996).  Therefore, if remand for exhaustion would be futile with respect to the unexhausted claims, I may consider those claims procedurally defaulted.

### III.  ANALYSIS

Blackmer presents nineteen overlapping grounds for relief that fall into six distinct categories.[4]  I analyze his arguments with respect to each category of claims in turn.

### A.  Speedy Trial

Blackmer claims that the state violated his Sixth Amendment right to a speedy trial (grounds 3 and 14).  He alleges that the delay was caused by prosecutorial misconduct, namely, the state's failure to turn over the "Brady Material Answer."

---

[4] I resolved Blackmer's additional claims in a prior order (Doc. No. 40) approving the Magistrate Judge's Report and Recommendation (Doc. No. 35).

Blackmer first asserted his speedy trial claim in a motion to dismiss.  The court summarily denied this motion prior to trial and provided further explanation of its reasoning in an order dated March 24, 1999.  The court concluded that the Connolly testimony (the subject of the "Brady Material Answer") was irrelevant to the charges because Connolly provided the testimony in 1994 and the conduct giving rise to the conviction at issue did not occur until late 1995.  The court further noted that Blackmer himself caused most of the delay prior to trial.

The New Hampshire Supreme Court addressed this claim on direct appeal, holding both that Connolly's testimony was irrelevant to the 1999 conviction and that, in any event, the state gave Blackmer a copy of Connolly's grand jury testimony in 1997.  To the extent that Blackmer claimed that he was entitled to the Brady Material Answer prior to trial, the court also held that Connolly's testimony was irrelevant even if it was perjurious.  Examining the record and giving deference to the factual findings of the state court, I cannot say that the state court's adjudication of this issue resulted in a judgment that was contrary to or involved an unreasonable application of federal law.  Moreover, there is no indication that the state

court based its decision on an unreasonable determination of the facts.  Accordingly, the Warden is entitled to summary judgment with respect to grounds 3 and 14.

**B.   Unilateral Conspiracy**

Blackmer next presents a series of arguments that are premised on his contention that the state prosecuted him on a unilateral conspiracy theory.  The New Hampshire Supreme Court rejected his core claim that state law does not permit a conspirator to be convicted of a unilateral conspiracy.  Blackmer, 149 N.H. at 50.  In an effort to salvage something from this argument, Blackmer asserts in a conclusory fashion both that the state conspiracy statute is unconstitutionally vague (grounds 1 and 4) and that the trial court's jury instructions improperly permitted the jury to convict him of participating in a unilateral conspiracy (ground 17).  Both arguments are obviously without merit.  Finally, Blackmer asserts that his counsel was ineffective because he based Blackmer's defense on the incorrect premise that a person could not be convicted of participating in a unilateral conspiracy  (grounds 1, 2, 22, 23).  The Merrimack County Superior Court properly rejected this argument when it granted the state's motion to dismiss Blackmer's habeas corpus

petition.  Accordingly, the Warden's motion for summary judgment
is granted with respect to grounds 1, 2, 4, 17, 22 and 23.

**C.   <u>Prosecutorial Misconduct</u>**

Blackmer next presents several claims that the state
committed prosecutorial misconduct.  His principal argument
(ground 7) is that the state improperly failed to produce the
Brady Material Answer.  The New Hampshire Supreme Court addressed
this issue in disposing of Blackmer's speedy trial claim when the
court reasonably determined that the information Blackmer was
seeking was irrelevant to his 1999 conviction.  <u>Blackmer</u>, 149
N.H. at 49–50.  The state's alleged failure to produce irrelevant
information cannot serve as the basis for a <u>Brady</u> violation.
<u>United States v. Connolly</u>, 504 F.3d 206, 212 (1st Cir. 2007).
Accordingly, this claim necessarily fails.  To the extent that
Blackmer argues that the state interfered with his right to
counsel by refusing to produce the Brady Material Answer (ground
16), this argument also fails because the state is under no
obligation to produce irrelevant information.

The New Hampshire Supreme Court resolved Blackmer's
additional claims that the state improperly failed to produce a
memorandum from witness Jane Young (ground 6) and the identity of

Grafton County Deputy Sheriff, Kenneth May, (ground 9) on independent and adequate state law grounds.  Blackmer raised both arguments in a cursory way in his appellate brief but not in his notice of appeal.  The court declined to address these arguments as well as several others on the ground that the arguments "were not preserved, were not sufficiently developed for appellate review or were not raised in his notice of appeal." <u>Blackmer</u>, 149 N.H. at 49.  Blackmer has failed to establish either cause or prejudice for his failure to properly litigate these claims in state court and he has also failed to demonstrate that failure to review this claim will result in a fundamental miscarriage of justice.  Accordingly, the Warden's motion for summary judgment is granted with respect to grounds 6, 7, 9 and 16.

**D.   <u>Right to Counsel</u>**

Blackmer presents several claims that the state denied him his Sixth Amendment right to counsel.  His principal claim in this area is that the New Hampshire Supreme Court improperly denied him his right to counsel on appeal (grounds 10 and 15). The Supreme Court explained in its order resolving Blackmer's appeal that it declined to appoint new counsel after it allowed his first appellate counsel to withdraw because it determined

that such an appointment would be futile given Blackmer's unwillingness to allow counsel to file a brief on his behalf until the state produced the Brady Material Answer.  Id. at 50. The state court's finding on this point was reasonable under the circumstances.  Accordingly, Blackmer's right to appellate counsel claims fail because he forfeited his right to counsel on appeal.

Blackmer also argues that the court violated his right to counsel by refusing to appoint counsel to represent him with respect to his motion for new trial (ground 25).  This argument fails because a defendant does not have a Sixth Amendment right to counsel with respect to a state post-conviction proceeding. Pennsylvania v. Finley, 481 U.S. 551, 556-57 (1987).

Blackmer also alleges that the trial court interfered with his right to effective assistance of counsel when it ordered counsel to file a notice of appeal that was inadequate because Blackmer had not yet received the Brady Material Answer (ground 19).  This claim is meritless because, as discussed above, the New Hampshire Supreme Court ruled that the Brady Material Answer is irrelevant to Blackmer's charges.  See Blackmer, 149 N.H. at 49-50.

Blackmer further argues that the trial court interfered with his right to effective assistance of counsel when it denied counsel's motion for a mistrial after a witness mis-stated the fact that marijuana had been found in Blackmer's home when, in fact, the vegetative matter found in Blackmer's home was never confirmed by chemical testing to be marijuana (ground 24).  Even if Blackmer could characterize this as a Sixth Amendment claim, Blackmer can demonstrate no prejudice resulting from the trial court's denial of counsel's motion for a mistrial because the court required the prosecutor to cure the witness's mistake by eliciting a clarification from the witness, in front of the jury, that the matter found in Blackmer's home was never chemically analyzed or confirmed to be marijuana.  Accordingly, the Warden's motion for summary judgment is granted with respect to grounds 10, 15, 19, 24 and 25.

**E.   Eighth Amendment Claim**

Blackmer claims that the punishment he received in this case violates his Eighth Amendment right to be free from cruel and unusual punishment (ground 12).  This argument was never litigated in state court, but it would be futile to require exhaustion both because it is evident under the circumstances

that the state courts would deem the claim to be procedurally defaulted and because the claim is obviously meritless in any event. Accordingly, the Warden's motion for summary judgment is granted with respect to ground 12.

**F.   Defective Indictment Claim**

Blackmer claims that the state obtained his conviction by a defective indictment in violation of his Fifth Amendment due process rights (ground 11). Blackmer attempted to raise this claim on direct appeal, but the New Hampshire Supreme Court declined to consider it on procedural grounds because it was either not preserved, not sufficiently developed for appellate review, or not raised in the notice of appeal. Blackmer, 149 N.H. at 49. Thus, the state court adjudication of this claim rests on independent and adequate state grounds.

Blackmer has failed to establish either cause or prejudice with respect to his procedural default on this claim, and he has failed to demonstrate that this claim will result in a fundamental miscarriage of justice. Accordingly, the Warden's motion for summary judgment is granted with respect to ground 11.

**IV.   <u>CONCLUSION</u>**

For the reasons set forth in this Memorandum and Order, the Warden's motion for summary judgment (Doc. No. 64) is granted. The Clerk is directed to enter judgment accordingly.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


January 28, 2008

cc:  Paul Blackmer, pro se
     Elizabeth Baker, Esq.